UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LANCE G. OWEN,<br><br>             Plaintiff,<br><br>     vs.<br><br>DARIN YOUNG, TROY PONTO, JAN WAGNER,  ALLCOCK, AW AT SDSP;<br><br>             Defendants. | 4:15-CV-04087-KES<br><br>REPORT AND RECOMMENDATION |

### INTRODUCTION

Plaintiff, Lance G. Owen ("Owen") is an inmate at the South Dakota State Penitentiary ("SDSP") in Sioux Falls, South Dakota.  Owen has filed a lawsuit pursuant to 42 U.S.C. § 1983, alleging the defendants have violated his civil rights in various ways.  Owen has already paid the initial partial filing fee, and will be granted in forma pauperis status.

The Court has, as it must, "screened" this case pursuant to 28 U.S.C. § 1915, and has determined it must be dismissed  for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

### JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's October 16, 2014 Order.

**FACTUAL BACKGROUND**

    This is the second civil complaint Owen has filed regarding the same subject matter. Judge Schreier dismissed Owen's first complaint without prejudice for failure to state a claim upon which relief could be granted on August 20, 2013. See Owen v. Young, Civ. No. 13-4079, United States District Court, District of South Dakota, Southern Division. Rather than pursue an appeal, Owen has filed a subsequent § 1983 lawsuit with the district court. Owen alleges one cause of action, but makes multiple claims within that cause of action. He asserts the defendants have denied his right to equal protection, because though he is a "lifer" at the SDSP, he has not been granted permission to transfer funds from his "frozen" prison account to (1) his other prison sub-accounts; or (2) outside the prison to his relatives.

    Although not overtly stated, Owen also implies the defendants have violated federal law by refusing to release the frozen funds or allow Owen to use the funds and he directs. The source of the frozen funds about which Owen complains is a check issued to Owen by the United States Department of Interior, Office of the Special Trustee for American Indians. The money came to Owen as the result of a settlement in the class action lawsuit entitled Cobell v. Salazar, Civ. No. 1:96CV01285 (United States District Court for the District of Columbia). Owen explains a total of $966.54 from this settlement was deposited into his "frozen" account on December 31, 2012 and that his requests to release those funds have been wrongfully denied.

**DISCUSSION**

**A.     Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards.**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted." This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6). Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219 (D. Neb. 1997). "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.' " Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper framework." Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

The United States Supreme Court addressed the standard that district courts are to apply to Rule 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

The law predating Twombly and Iqbal held that under Rule 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of

3

his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). However, Conley's "no set of facts" language was overruled in Twombly. Twombly, 550 U.S. at 563. Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Court also imposed a "plausibility standard," holding that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. Id. at 556. The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" from Twombly and Iqbal. Iqbal, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for

4

a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2). Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth. Id. at 679-680. Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. It is through the lens of Twombly and Iqbal that the court examines the sufficiency of Owen's complaint to determine whether it survives screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1).

**B.      Owen's Complaint Fails to State a Claim Upon Which Relief May Be Granted**.

Though Owen has supplemented his complaint with more information than was provided in Civ. No. 13-4079, it is nevertheless insufficient to state a claim upon which relief may be granted.

**1. Count 1:  The Defendants Have Not Violated the Equal Protection Clause Nor Federal Law in their Application of DOC Policy 1.1.B.2 to Mr. Owen's Frozen Account.**

Owen first asserts he believes the manner in which defendants have applied SDDOC policy 1.1.B.2 violates the Equal Protection clause because he is a "lifer" but nevertheless has not been allowed to withdraw money from his frozen account, while others are allowed to do so.  The court disagrees.  DOC Policy 1.1.B.2 provides "after an inmate's spend subaccount limit reaches $140.00 during any calendar month, a percentage established by the DOC may be transferred to the inmate's savings subaccount based on receipt type. Any remaining funds received will have a percentage disbursed to Fixed Obligations in priority by type.  The Inmate Banking System (IBS) will then go to the next fixed obligation type if funds are remaining." See DOC Policy 1.1.B.2 (Docket 1-1, pp. 9-34), Section IV "PROCEDURES," § 8.A. at p. 7.  The Policy also explains, however, that funds received from the Veteran's Administration (VA) or the United States Department of Interior with the Office of the Special Trustee for American Indian funds are treated differently. Specifically, if funds from those two sources are received they are deposited into the inmate's spend subaccount, subject to "provisions outlined within this policy." See Docket 1-1 at p. 12, Policy 1.1.B.2, Section IV "PROCEDURES," § 2.E.

6

¶¶1-2 at p. 4. The balance of any proceeds received from the VA or the Special Trustee which exceeds the $140.00 deposit limit for the inmate's spend account "will be deposited in the inmate's frozen subaccount." Docket 1-1 at p. 12, Policy 1.1.B.2, Section IV, "PROCEDURES," § 2.E. ¶1 at p. 4. Funds received from the VA or the Special Trustee "may not be used to pay toward disbursement obligations unless the inmate specifically requests that the funds be applied to fixed obligations. Credit obligations will be deducted prior to depositing the funds to the spend account." Docket 1-1 at p. 12, Policy 1.1.B.2, Section IV, "PROCEDURES," § 2, p.4.

Another section of the Policy explains that fixed obligations will be paid according to the inmate's financial plan, and according to a set priority. The first priority on the list is child support, and the last is cost of incarceration. See Docket 1-1, p. 15-16, Policy 1.1.B.2, Section IV, "PROCEDURES," § 8. A-C, (¶¶1-6), pp. 7-8. Comparing the language of the policy to the transaction report Owen attached to his complaint (Docket 1-1, p. 51-53) the court finds no error in the manner in which the policy was applied. After Owen's Cobell settlement check in the amount of $1,100.41 was received from the Special Trustee, Owen's spending subaccount was credited with $138.99, bringing the total in his spending subaccount to $140.00. Thereafter, the remainder of the Special Trustee's check ($ 961.42) was deposited in his frozen account, where it remains.

There is nothing facially unconstitutional about the policy or irregular about the manner in which it was applied to Owen's funds.

### (a).   The Defendants Have Not Applied Policy 1.1.B.2 In a Manner Which Violates the Equal Protection Clause

Owen asserts (1) he is being treated differently than other inmates and (2) the DOC's failure to allow him to spend his frozen funds as he sees fit violates federal law.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994)(citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." Klinger, 31 F.3d at 731 (citation omitted). The first step in an equal protection case is determining whether the plaintiff has demonstrated different treatment than others similarly situated to him. Absent a threshold showing that he is similarly situated to those who allegedly received more favorable treatment, the plaintiff does not have a viable equal protection claim. Id.

If an equal protection claim is not based on a "suspect class" or a fundamental right, it is subject to a rational basis review. Gilmore v. County of Douglas, State of Nebraska, 406 F.3d 935, 937 (8th Cir. 2005) (citations omitted). The rational basis review is "the paradigm of judicial restraint. Congress does not violate the right to equal protection merely because the classifications made by its laws are imperfect, or because in practice a classification results in some inequality." Minnesota Senior Federation,

8

Metropolitan Region v. United States, 273 F.3d 805, 808 (8th Cir. 2001) (citations omitted, punctuation altered).

The United States Supreme Court has explained that the rational basis review in an equal protection analysis

> . . . is not a license for courts to judge the wisdom, fairness or logic of legislative choices.  Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.  For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.  Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.  Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification.  Instead, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
>
> A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.  A legislative choice is not subject to courtroom factfinding and may be based on a rational speculation unsupported by evidence or empirical data.  A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record.  Finally, courts are compelled under rational basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality . . .

Heller v. Doe, 509 U.S. 312, 319-320 (1993) (citations omitted, punctuation altered).

Finally, "[n]either prisoners nor indigents constitute a suspect class . . ." Murray v. Dosal, 150 F.3d 814, 818 (8th Cir. 1998).  And "[t]he United States

Supreme Court has defined fundamental rights as those rights that are 'deeply rooted in this nation's history and tradition.' " Johnson v. University of Iowa, 431 F.3d 325, 331 (8th Cir. 2005) (citing Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977)). It is with these general principles in mind that the sufficiency of the equal protection claims in Owen's complaint are viewed.

Owen asserts that as a "lifer," he should be allowed to instruct prison officials to transfer the money from his frozen account to his spend account or that it be sent to his relatives, just as other "lifer" inmates are allowed to do. Owen asserts that because the Warden has not approved his request to release the funds, his rights under the Equal Protection clause have been violated.

Policy 1.1.B.2 addresses an inmate's ability to transfer funds between his various accounts. See Docket 1-1 at p. 15, Policy 1.1.B.2, Section IV "PROCEDURES," § 7.A.1., p. 7. An inmate who wishes to transfer money between his accounts, however, is subject to certain restrictions. For example, an inmate who wishes to transfer money from his spend account to savings is subject to the $250.00 maximum balance limit on the savings account. See Docket 1-1 at p. 15, Policy 1.1.B.2, Section IV "PROCEDURES," § 7.A.1.a., p. 7. Additionally, inmates who transfer money from spend to savings cannot thereby render themselves eligible for indigent commissary. See Docket 1-1 at p. 15, Policy 1.1.B.2, Section IV "PROCEDURES," § 7.A.1.d., p. 7. Finally, only inmates who are serving life sentences may transfer money from their frozen accounts to either their spend or savings subaccounts, but they must obtain the Warden's approval. See Docket 1-1 at p. 15, Policy 1.1.B.2, Section IV

"PROCEDURES," § 7.A.2., P. 7 and § 10.G-I, p. 10. (further explaining limitations on frozen accounts).[1]

Judge Piersol has further explained the concept of frozen inmate accounts in Miller v. Weber, 2013 WL 10091472 (D.S.D., January 23, 2013). At issue in that case was whether the funds in a frozen account could be considered in determining the initial partial filing fee under the PRLA. Id. at *2. In Miller, Judge Piersol noted frozen accounts "are separate subaccounts in which the Department of Corrections 'may place a designated amount of an inmate's deposits and earnings' which 'are to be saved until release.' " Id. at *1 citing ARSD 17:50:01:21. Judge Piersol further noted that frozen funds could be withdrawn if the inmate is serving a life sentence, but even then only with the approval of the Warden and if "the inmate has shown a documented, legitimate and compelling use for the funds." Id.

"Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim. . . The similarly situated inquiry focuses on whether the plaintiff [is] similarly situated to another group for purposes of the challenged government action." Klinger, 31 F.3d at 731 (citation omitted). Owen asserts he is similarly situated to the other "lifer" inmates whose requests to transfer their frozen funds have been granted. Even assuming other "lifer" inmates

---

[1] Policy 1.1.B.2 Section IV "PROCEDURES," § 10.I, p. 10 states "Funds in an inmate's frozen subaccount will remain in the subaccount until his/her release from custody. Inmates may not withdraw funds from their frozen subaccount without the approval of the Warden and then, only if they are serving a life or death sentence or the inmate has a documented, legitimate reason to request the withdrawal of the frozen funds. (See ARSD 17:50:01:21)."

have been allowed to transfer their frozen funds, however, Owen has nevertheless not met the threshold showing. Owen has not claimed other inmates have made requests for frozen funds to be transferred for the same reasons (he requested his money be transferred, in varying amounts, to his phone account, to family members for travel expenses, and to a credit union in Sioux Falls for undisclosed reasons) (see, Docket 1-1 at p. 2-7) or that the other inmates had the same amount of IFRs (inmate financial responsibilities) as Owen did at the time the requests were made.[2] Because Owen has not adequately claimed he is similarly situated to the other inmates whom he claims have received more favorable treatment, he has not stated facts which "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Alternatively, Owen's complaint could be interpreted as asserting the defendants have erroneously applied their own policy by denying his "lifer" request to transfer or mail out his frozen funds. This alternative theory does not further Owen's cause. "[A] violation of prison policy alone does not give rise to section 1983 liability." Moore v. Rowley, 126 Fed. Appx. 759, 760 (8th Cir. 2005) (citing Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997). Instead, Owen must sufficiently allege the defendants violated a constitutional right. Howard, 109 F.3d at 430. The Policy merely indicates that though only

---

[2] According to Owen's documentation, the amount of his Inmate Financial Responsibility ("IFRs") varied but was in excess of $60,000.00 when he requested to withdraw his frozen funds. See Docket 1-1 at pp. 2-4. It is unclear exactly what those amounts represent, but some of the documentation indicates Owen had "court ordered obligations" which exceeded $60,000.00. See Docket 1-1 at p. 69. Policy 1.1.B.2 explains "court ordered obligations" can include restitution, fines, fees, and court-ordered sanctions. See Docket 1-1 at p. 16, Policy 1.1.B.2 Section IV "PROCEDURES" § 8.C.2., p. 8.

"lifers" may withdraw funds from their frozen accounts, they must obtain permission from the Warden. Permission will be granted only if the Warden deems the reason for the request "legitimate." See Docket 1-1 at pp. 15, 18; Policy 1.1.B.2, Section IV "PROCEDURES," §§ 7.A.2 & 10.I. In other words, the Warden retains discretion to grant or deny the request. That the Warden has chosen not to exercise his discretion to release Owen's frozen funds does not state a claim for relief for a constitutional deprivation. Sigler v. Lowrie, 404 F.2d 659, 661-62 (8th Cir. 1968) (no constitutional violation when warden declined to release funds from prisoner's account, where statute indicated warden could do so "as he deemed best."). In Sigler, the Eighth Circuit cautioned that even assuming the warden violated the applicable state statute by his refusal to release the inmate's funds, "this does not properly state a claim for relief under the Civil Rights Act. Title 42 U.S.C. § 1983 is not concerned with mere violations of state law." Sigler, 404 F.2d at 662. The same is true here. Even assuming the denial of Owen's request for release or withdrawal of his frozen funds constitutes a violation of Policy 1.1.B.2, Owen has failed to adequately state how such a violation rises to the level of a constitutional violation, and "Title 42 U.S.C. § 1983 is not concerned with mere violations of [prison policies]." Sigler, 404 F.2d at 662. Because Owen has not adequately articulated a constitutional violation, he has not stated facts which "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### (b).  The Defendants Have Not Violated Federal Law by Restricting Owen's Access to The Cobell Settlement Funds.

"In any § 1983 action the initial inquiry must focus on whether the two essential elements to a  § 1983 action are present:  (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Dubose v. Kelley</u>, 187 F.3d 999, 1002 (8th Cir. 1999) (citation omitted).  Owen's final claim is that defendants have violated federal law because the proceeds of the <u>Cobell</u> settlement cannot be taxed nor considered "income" for purposes of eligibility for federal programs.   Owen attached to his complaint a copy of a letter which cites to the law upon which he bases his claim.  See Docket 1-1, p. 49.  The Claims Resolution Act states in relevant part:

> (f)  Taxation and other benefits.—
>
> > (1)  Internal Revenue Code.—
> > For purposes of the Internal Revenue Code of 1986, amounts received by an individual Indian as a lump sum or periodic payment pursuant to the Settlement shall not be—
> >
> > (A) Included in gross income; or
> > (B) Taken into consideration for purposes of applying any provision of the Internal Revenue Code that takes into account excludable income in computing gross income or modified adjusted gross income, including section 86 of that Code (relating to Social Security and tier 1 railroad retirement benefits).
> >
> > (2)  Other benefits.—
> >
> > Notwithstanding any other provisions of law, for purposes of determining initial eligibility, ongoing

> eligibility, or level of benefits under any Federal or federally assisted program, amounts received by an individual Indian as a lump sum or a periodic payment pursuant to the Settlement shall not be treated for any household member, during the 1-year period beginning on the date of receipt—
>
> (A) as income for the month during which amounts were received; or
> (B) as a resource.

See Claims Resolution Act of 2010, HR 4783, 111th Cong. (2010), Sec. 101(f).

Owen asserts that by placing the settlement proceeds his "frozen" account and refusing to transfer them to an outside bank account, release them to his relatives, or allow him to spend them as he sees fit per his request, the defendants have violated the Claims Resolution Act. Again, the court disagrees. Owen has not been allowed to withdraw the funds for purposes of sending them to his relatives, transferring them to an outside bank account, or transferring to them to his own spending account. But Owen has not alleged the funds have been attributed to him for tax purposes or computing his eligibility for any federal assistance program, as prohibited by the Claims Resolution Act of 2010, HR 4783, 111th Cong. (2010), Sec. 101(f). As such, Owen has not sufficiently alleged a violation of the Claims Resolution Act—the only federal statute he cites in support of this § 1983 lawsuit against the defendants. Because Owen has not adequately articulated a federal statutory violation, he has not stated facts which "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**C. Owen's Filing Fee.**

If Owen's suit had been allowed to proceed and he prevailed on the merits, he would have recovered the filing fee.  Both the legislative history and the case law interpreting the Prison Litigation Reform Act, however, instruct that unsuccessful prison litigants, like any other litigants, do not get their filing fees back if their cases are dismissed.  That Owen's case is dismissed pursuant to the screening procedures of § 1915 does not negate his obligation to pay the fee.  In Re: Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997).  The obligation to pay a filing fee accrues the moment a plaintiff files his complaint with the court, and it cannot be avoided merely because the case is eventually dismissed as frivolous.  Anderson v. Sundquist, 1 F. Supp. 2d 828, 830 n. 5 (W.D. Tenn. 1998). One of the purposes of the Prison Litigation Reform Act is to

> require the prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits.  In doing so, the provision will deter frivolous inmate lawsuits.  The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively.  Prisoners will have to make the same decision that law abiding Americans must make:  Is the lawsuit worth the price?

Roller v. Gunn, 107 F.3d 227, 231 (4th Cir. 1997) (quoting 141 Cong. Rec. at S7526 (May 25, 1995).  See also In Re: Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) (prisoner will be assessed full filing fee even if his case is dismissed because "the PRLA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal.").  Owen remains responsible for the $350.00 filing fee.

Owen is advised that **the dismissal of this lawsuit will be considered his third "strike" for purposes of the Prison Litigation Reform Act.** Owen's previous strikes are found in the district court records at <u>Owen v. Mallo</u>, Civ. No. 96-4129 (United States District Court, District of South Dakota); and <u>Owen v. Young</u>, Civ. No. 13-4079 (United States District Court, District of South Dakota).

**28 U.S.C. § 1915(g) provides:**

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is RECOMMENDED to the district court that (1) Owen's Motion for in forma pauperis status (Docket 2) be GRANTED but that his Complaint (Docket 1) be DISMISSED without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § §§ 1915(e)(2)(B)(ii) and 1915A((b)(1).

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the

17

District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

    DATED this 5th day of June, 2015.

                        BY THE COURT:

                        /s/ Veronica L. Duffy
                        VERONICA L. DUFFY
                        United States Magistrate Judge